OPINION
{¶ 1} Appellant, Melissa Telson, gave birth to the minor child, Andrew Telson, on February 2, 2000. At the time of Andrew's birth, appellant was a minor and was the subject of Franklin County Children Services ("FCCS") herself. Shortly after Andrew's birth, he was taken by Melissa's mother, Corinna Telson, to Florida. Andrew was removed from Corinna and Melissa's care by a Florida Children Services agency on May 1, 2000. He was then transported to Franklin County and placed in the emergency custody of FCCS.
 {¶ 2} In July 2000, both Andrew and Melissa were placed in foster care in the same household. On February 1, 2001, FCCS was granted temporary custody of Andrew, although he and Melissa remained together in the same foster home. Melissa was given a case plan calling for drug and alcohol counseling in which she participated. She completed two of the required parenting classes, but balked at participating in others. She participated in individual counseling and play therapy, which included her son. She did not complete her schooling, but continued to attend. Melissa was truant at times and she left for Florida prior to the adjudicatory hearing for the permanent custody motion filed by FCCS, as indicated by a letter left for the foster parents. At the trial, her guardian stated that Melissa was AWOL without the child and that he did not even know where she was, that she has made irresponsible decisions and has been unable to be a primary caretaker to the child so that he supported the application.
 {¶ 3} On appeal, counsel appointed for that purpose appeared at the hearing without Melissa, without any knowledge of Melissa's whereabouts, or what she intended to do. After a relatively brief hearing on May 20, 2002, held over 200 days after the motion to terminate Melissa's parental rights, the trial court issued a judgment granting the motion.
 {¶ 4} Melissa's appellate counsel filed an appeal on her behalf, asserting the following assignment of error:
 {¶ 5} "The trial court erred by granting permanent custody of the minor child to the appellee when it had failed to comply with R.C.2151.414."
 {¶ 6} At trial, counsel for appellant sought a continuance which was vigorously opposed by FCCS since no one even knew where appellant was. The guardian ad litem for the infant child stated that she would like to support FCCS and stated that, in the time she has been guardian ad litem for the infant child, Melissa and her parents periodically just disappeared and that counsel for the grandmother had withdrawn because he could not contact her. She did not believe the hearing should be continued. The trial court overruled the motion for continuance and denied the request of appellant's counsel to withdraw. Counsel for the grandmother also requested that he be permitted to withdraw due to failure of communication with her, which was also denied.
 {¶ 7} FCCS called Suzanne LaSpina, the case worker for FCCS, as a witness. She stated that part of her job responsibilities included her assignment to the Telson case, which commenced in 1999. Appellant was 15 at the time Andrew was born on February 2, 2000. Appellant was 17 years old at the time of trial. The father is Joseph Reid, who was served and did not appear.
 {¶ 8} LaSpina testified that the case was originally opened on Melissa and her siblings when they were living with their grandmother in Reynoldsburg and Melissa was AWOL and not caring for her newborn infant, Andrew. Andrew remained in Melissa's care until his placement on May 1, 2000, which resulted because the grandmother, Corinna Telson, had taken Andrew to Florida. FCCS in Florida removed him from the home, because the grandmother was living in a trailer in an environment unsafe for Andrew. Andrew was then returned from Florida to Franklin County and placed in a foster home. Melissa was AWOL when Andrew was placed into the foster home. In July 2000, Melissa reappeared and, in August, she was placed in the same foster home as her infant son. They remained there until November 2001, when Melissa went AWOL to Florida. During the time in the foster home, the foster parents were Andrew's primary caretaker, not Melissa. A case plan was made for Melissa by order of the court in February 2001, which required drug and alcohol counseling for Melissa, parenting, completing some form of GED or graduation from high school and individual counseling for her and family counseling with Andrew. Melissa had counseling for drug and alcohol through her foster care network and was eventually placed on probation, which required drug and alcohol screens. She was enrolled in parenting classes and completed only two of them. She has not completed her education or made progress in that area. She did have weekly counseling through Focus on Youth and had play therapy with Andrew. Many times in counseling she stated that she just did not want to parent. She became frustrated easily and did not make much progress. Finally, on November 1, 2001, Melissa, age 17, went AWOL from that foster home and, in essence, abandoned her child, although in a letter to the foster parents, she stated she loved her child.
 {¶ 9} The next thing FCCS heard was from a call in Florida stating that Melissa had been picked up and was in a detention center. She was returned to Ohio in December 2001, and placed in a separate foster home where she remained until April when she went AWOL again to an unknown location. She had had no contact with Andrew. Her last visitation was in April 2001. The caseworker had no contact with the father for about one and one-half years before the hearing. The parents of the minor mother have not expressed any interest in having custody of Andrew, nor have the parents of Joseph Reid. The caseworker stated that Andrew needed a legally secure, permanent placement and that the foster family was interested in adopting him should the court grant permanent custody. She stated that Andrew had been in that same foster home throughout his foster care placement and that he was bonded to that family. He has not bonded with the father and not appreciably with the mother. She based her observations on interactions during visitations.
 {¶ 10} The trial court found that it was in the best interest of Andrew Telson to terminate the parental rights of Melissa Telson and Joseph Reid.
 {¶ 11} The hearing for permanent custody was held pursuant to the requirements of R.C. 2151.414. That hearing is ordinarily to be conducted within 120 days after the agency files the motion for permanent custody except, that for good cause shown, the court may continue the hearing for a reasonable period of time beyond the 120-day deadline. In this case, 200 days had elapsed before the hearing was held.
 {¶ 12} R.C. 2151.414(B)(1) provides that the court may grant permanent custody of a child to a movant if the court determines at the hearing by clear and convincing evidence that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody if, as pertinent, the following applies:
 {¶ 13} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 14} The motion of FCCS for permanent custody was based on this provision which must be proved by clear and convincing evidence.
 {¶ 15} R.C. 2151.414(D) sets forth all relevant factors, including but not limited to the following, for determining the best interest of a child:
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 21} Appellant's counsel argues that the trial court did not make all the findings necessary to terminate parental rights of Melissa Telson because the court found only that it was in the best interest of the child to terminate the parental rights of Melissa and that there was no reference to whether Andrew could or should be placed with either the parents or parents' families, no reference to the duration of FCCS' custody over Andrew, that there were no findings made under R.C.2151.414(E), nor any mention that the court's findings were supported by clear and convincing evidence.
 {¶ 22} The issue on appeal is whether the judgment of the trial court is against the manifest weight of the evidence, or legally insufficient.
 {¶ 23} There was clear testimony that the child had been in the temporary custody of FCCS for the requisite time. While there was some testimony of abandonment by appellant, that was not the determinative factor. All of the evidence at trial, including what may be inferred from lack of participation, is that neither the mother nor the grandparents are either able or willing to provide a legally secure permanent placement. The history of the mother and her parents strongly support a finding that they are unwilling or unable to provide a proper permanent environment for the child. The history of the father and his parents is lack of interest. While this evidence may have been somewhat brief, all of the evidence was clear and convincing of these findings.
 {¶ 24} The trial court found as follows:
 {¶ 25} "Continuation in the child's own home would be contrary to the child's welfare and that reasonable efforts have been made to prevent or eliminate the need for removal of said child from the child's own home.
 {¶ 26} "Placement and casework services were provided by the Agency to the family of the child, but the removal of the child from home continues to be necessary because the circumstances giving rise to the original filing have not been sufficiently alleviated."
 {¶ 27} The trial court's finding satisfies the requirements of R.C. 2151.414(E)(1), which provides as follows:
 {¶ 28} "(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[.]"
 {¶ 29} There is clear and convincing evidence that appellant, despite case planning and diligent efforts by FCCS to assist her to remedy the problems that caused the child to be placed outside the home, has continuously and repeatedly failed to substantially remedy the conditions. In fact, the evidence is clear that she is still running from responsibilities.
 {¶ 30} In the case of In re William S. (1996), 75 Ohio St.3d 95, the Ohio Supreme Court stated that permanent custody may not be granted until the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist. In this case, although briefly, the trial court made a finding that was clearly based on the evidence and which clearly was based on clear and convincing evidence (although the trial court should have specifically said so), since there was no evidence to rebutt the findings. How much clearer can the evidence be when a parent willfully abandons a child, even if the abandonment was not intended to be permanent, to pursue her own misguided interests. Additionally, it is clear that appellant's parents would not provide adequate care as demonstrated by the history previously related. Since we believe it would be an abuse of discretion for the trial court to have ruled otherwise, we find it unnecessary and contrary to the best interest of the child to remand the case to the trial court for the trial court to supply the obvious.
 {¶ 31} Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
PETREE, P.J., and BROWN, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.